IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 04-cv-00749-MSK-PAC

HIGH COUNTRY CITIZENS ALLIANCE;
TOWN OF CRESTED BUTTE, COLORADO;
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GUNNISON,
COLORADO,

      Plaintiffs,

v.

KATHLEEN CLARKE, in her official capacity as Director of the U.S. Bureau of Land
Management;
RON WENKER, in his official capacity as Colorado BLM Director;
U.S. BUREAU OF LAND MANAGEMENT;
GALE NORTON, in her official capacity as Secretary of the Interior;
UNITED STATES DEPARTMENT OF THE INTERIOR;
PHELPS DODGE CORPORATION;
MT. EMMONS MINING COMPANY,

      Defendants.

---

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT (#36, #38)

---

THIS MATTER comes before the Court on cross-motions for summary judgment **(#36,
#38)** filed by the Plaintiffs and Defendants Kathleen Clarke, Ron Wenker, Bureau of Land
Management, Gale Norton, and the Department of the Interior ("the Federal Defendants").
Having considered the motions, the responses **(#40, #42)**, the replies **(#48, #50)**, the surreply
**(#56)**, and all supporting briefs, the Court finds and concludes as follows.

## I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

## II.  Background

Only one claim remains in this action.  The Plaintiffs allege that the Bureau of Land Management ("BLM") and the Department of the Interior improperly failed to provide documents in accordance with the Freedom of Information Act ("the FOIA").  They allege that the High Country Citizens Alliance ("the Alliance") requested documents on April 28, 2000, and August 17, 2001, but the BLM has released only some of the documents.

It is not clear from the Complaint which documents are at issue.  The Plaintiffs allege that they did not receive several pages of a Mineral Report as well as two attachments to the Mineral Report.  They then allege that some of these documents were provided to them following an administrative appeal.  The Court discerns from the parties' respective briefs that the Plaintiffs have received all documents they requested except for excerpts from the Mineral Report and excerpts from Appendix 2 to the Mineral Report.

## III.  Issue Presented

Are the Federal Defendants are required to disclose the documents, and excerpts of documents, they withheld under Exemption 4 of the FOIA?

## IV.  Material Facts

The following material facts are not in dispute.

1.      The Alliance submitted a FOIA request to the BLM on August 17, 2001, seeking documents related to the Mt. Emmons Mining Company's Mineral Patent Application No. COC-

54557.  This FOIA request renewed an earlier FOIA request made by the Alliance in March 2000.

2.        The BLM informed the Alliance by letter that before it would respond to the FOIA

request, it would give the submitter of confidential information an opportunity to object to

disclosure.

3.        The Mt. Emmons Mining Company and the Phelps Dodge Corporation informed

the BLM by electronic mail that release of the withheld portions of the Mineral Report would

likely "cause substantial harm to its competitive position."  They stated:

> The molybdenum market can be volatile and sometimes speculative.
> Release of proprietary mineral and economic information would
> result in a distinct competitive disadvantage and harm to Phelps
> Dodge.  Information about the presence, kind, and grade of ore in
> specific drill holes, and the quantity and grade of reserves, coupled
> with estimates and analyses of mineral extraction, processing, and
> mine reclamation costs, all could be used by competitors in
> developing pricing strategies to underbid Phelps Dodge in the
> futures markets.  Release of sampling data also could artificially
> inflate property values in the area by revealing valuable prospects of
> which competitors otherwise would not be aware.  This type of
> information customarily is considered proprietary in the mining
> industry, and its release could result in severe economic damage to
> the mining company that invested vast sums of capital acquiring the
> information.  Such information generally should be kept confidential
> for the life of the developed mine.

4.        The BLM responded to the August 17, 2001 FOIA request.  It stated that some of

the requested documents had already been provided and that other documents were exempt from

disclosure under Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4), because they were "voluntarily

submitted to the government" and contained information that was "not the type of information

that is customarily disclosed to the public by the Submitter."  It stated: "the pages of the Mineral

Report that are being withheld under Exemption 4 are pages 1-3, 42-43, 54-55, 57-72, and

Attachments 2 and 5.  These pages contain information pertaining to tonnage and grade considerations, economic evaluation and analysis, mineral exploration and development, sampling procedures and analysis, and conclusions and recommendations."

5.       Notwithstanding the language of the BLM's response to the Alliance's FOIA request, the parties agree that the Mineral Report and its Attachments were not voluntarily submitted.  Rather, the BLM required these documents to be submitted in connection with the Mt. Emmons Mining Company's patent application.

6.       The Alliance appealed from the BLM's response to its FOIA request to the Department of the Interior.  The Department of the Interior did not rule on the appeal and instead informed the Alliance that it had the right to commence a legal action.

7.       At the time the summary judgment motions were filed, the BLM had not disclosed the following documents: (a) pages 1-3, 42 (redacted), 54-55 (redacted), and 57-72 of the Mineral Report; (b) the entire Western Mine Engineering Report (which was Attachment 2 to the Mineral Report); and (c) the entire Behre Dolbear Report (which was Attachment 5 to the Mineral Report).

8.       The Mt. Emmons Mining Company made the Behre Dolbear Report available to the public when it applied for a water right in the Colorado state courts.  As a result, the BLM subsequently disclosed to the Plaintiffs: (a) pages 2, 42, 54 and 55 of the Mineral Report, all of which are redacted; (b) the cover sheet and pages i through vii, 1-1, 6-1, 6-3, 6-4, 6-6, 6-7, 6-8, 6-10, 7-1, 8-1, 8-2, 8-9, 9-1, 9-4, 9-5, 10-1, 10-4, 10-7, 10-8, 10-9, 10-11, 10-14, 10-15, 10-16, 10-18, 10-22, 10-23, 10-25, 10-28, 11-1, 11-2, 11-12, 11-13, 11-14, 11-15, 12-2, 12-3, 12-4 , 12-5, 12-10, 12-11, 12-12, 12-13, 12-17, 12-25 and 12-35 of the Western Mine Engineering

Report, some of which are redacted, and attachments to that report; and (c) the entire Behre Dolbear Report. These disclosed excerpts of the Mineral Report and Western Mine Engineering Report contained information also contained in the Behre Dolbear Report.

9.      Western Mine Engineering, Inc., prepared the Western Mine Engineering Report for use in connection with the Mt. Emmons Mining Company's patent application. Western Mine Engineering, Inc., was an independent third-party contractor hired by the Mt. Emmons Mining Company pursuant to a Consulting Service Agreement to prepare a report evaluating the economics of a large molybdenum deposit. However, it worked under the supervision and control of the United States Forest Service, and it was required to submit its report directly to the United States Forest Service. Such report became the property of the United States Forest Service.

10.     The United States Forest Service created the Mineral Report. The Mineral Report incorporates the economic analysis from the Western Mine Engineering Report and data obtained from the Mt. Emmons Mining Company. The BLM did not disclose those portions of the Mineral Report which incorporated such economic analysis and data.

11.     The Federal Defendants prepared a revised *Vaughn* index[1] which identifies the documents that the BLM did not disclose and the subject matter of each document.

---

[1] A Vaughn index is a compilation which lists each of the withheld documents and explains why they were withheld. *See Anderson v. Dept. of Health & Human Services*, 907 F.2d 936, 940 n.3 (10th Cir. 1990).

## V.  Standard of Review

Determination of claims or defenses on their merits without a trial is governed by Rule 56

of the Federal Rules of Civil Procedure, which facilitates the entry of a judgment if no trial is

necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56

authorizes summary adjudication when there is no genuine dispute as to any material fact and a

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law

determines the material facts and issues.  It specifies the elements that must be proved for a given

claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See*

*Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's*

*Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary

judgment is precluded if the evidence presented in support of and opposition to the motion is so

contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 248.  When considering a summary judgment motion, a court

views all evidence in the light most favorable to the non-moving party, thereby favoring the right

to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).

Once the moving party has met its burden, to avoid summary judgment the responding party must

present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See*

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v.*

*Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence for a reasonable jury to find in favor of the non-movant on the claim or

defense that the non-movant is obligated to prove.  If the respondent fails to produce sufficient

competent evidence to establish its claim or defense, the claim or defense must be dismissed.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment.  "Because the determination of

whether there is a genuine dispute as to a material factual issue turns upon who has the burden of

proof, the standard of proof and whether adequate evidence has been submitted to support a

*prima facie* case or to establish a genuine dispute as to material fact, cross motions must be

evaluated independently."  *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp.

2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita,*

226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th

Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one

does not require the grant of another.").

## VI.  Analysis

Both summary judgment motions address the same legal issue – whether the Federal

Defendants failed to disclose documents they were required to disclose under the FOIA.  The

FOIA provides the public with a right of access to federal agency records.  *See Casad v. United*

*States Dept. of Health and Human Services*, 301 F.3d 1247, 1250 (10th Cir. 2002).  Its purpose

is to enable the public to scrutinize agency action so that the government can be held accountable

for its decisions.  *See Anderson v. Dept. of Health & Human Services*, 907 F.2d at 941.  To

further this purpose, the FOIA is to be broadly construed in favor of disclosure.  *See Audubon*

*Society v. United States Forest Service*, 104 F.3d 1201, 1203 (10th Cir. 1997).

The FOIA sets forth nine exemptions from disclosure all of which are narrowly construed. *See id.*; *Casad*, 301 F.3d at 1250. These exemptions allow for nondisclosure when there are legitimate governmental or private interests which could be harmed by the release of information. *See Casad*, 301 F.3d at 1251. A government agency bears the burden of justifying the nondisclosure of documents under the FOIA. *See id.*; 5 U.S.C. § 552(a)(4)(B).

This Court's review of a FOIA claim is *de novo*. *See Anderson v. Dept. of Health & Human Services*, 907 F.2d at 941. To fulfill its obligation under the FOIA, the Court may utilize any procedure it deems appropriate. *See id.* at 942. For instance, the Court may review the disputed documents *in camera* along with affidavits and other exhibits, or it may simply rely upon a sufficiently detailed *Vaughn* index. *See id.*

### A. The Federal Defendants' Motion

The Federal Defendants contend that there are three documents which they are not required to disclose pursuant to Exemption 4 of the FOIA: (1) page 8 of Document 2; (2) pages 1-3, 42 (redacted), 54-55 (redacted), and 57-72 of the Mineral Report; and (3) the Western Mine Engineering Report. The Plaintiffs respond that Document 2 is not at issue. However, they contend that another document – the Behre Dolbear Report – should have been, but was not, disclosed. The Federal Defendants subsequently provided the Behre Dolbear Report to the Plaintiffs along with additional pages of the Mineral Report and selected pages from the Western Mine Engineering Report. They therefore contend that the Plaintiffs' claim *vis a vis* the Behre Dolbear Report is moot.

Because mootness is a threshold issue, the Court addresses it first. In support of their assertion that the Plaintiffs' request for the Behre Dolbear Report is moot, the Federal Defendants

rely upon *Anderson v. United States Dept. of Health & Human Services* and *Crooker v. United States State Dept.*, 628 F.2d 9 (D.C. Cir. 1980).  In both cases, the courts concluded that a FOIA claim was moot when an agency had already disclosed the requested document.  Because the Federal Defendants have produced the Behre Dolbear Report to the Plaintiffs, their FOIA claim is moot with respect to this document.

Next, the Federal Defendants contend that it was proper not to release the remaining documents under FOIA exemption 4, which allows an agency to withhold "commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4).  With regard to each withheld document, the Federal Defendants must prove: (1) the documents contain commercial or financial information; (2) the information was obtained from a person; and (3) the information is privileged or confidential.  *See Anderson v. Dept. of Health & Human Services*, 907 F.2d at 944.  The parties agree that the withheld documents contain commercial or financial information.  Thus, only two elements are disputed.

**Obtained From a Person**

The Federal Defendants argue that the withheld portions of the Mineral Report and the Western Mine Engineering Report consisted of information obtained from Western Mine Engineering, Inc. and the Mt. Emmons Mining Company, and these two entities are "persons." The Plaintiffs do not dispute that the Mt. Emmons Mining Company is a "person" but dispute that Western Mine Engineering, Inc. is a "person" for purposes of Exemption 4.

The FOIA defines "person" as "an individual, partnership, corporation, association, or public or private organization other than an agency[.]" 5 U.S.C. § 551(2).  However, information contained in a government-generated report is obtained from a "person" if such information came

from a non-governmental source. *See Public Citizen Health Research Group v. National Institutes of Health*, 209 F. Supp. 2d 37, 44 (D.D.C. 2002).

Even though Western Mine Engineering, Inc., as a corporation, meets the statutory definition of a "person" for purposes of the FOIA, the Plaintiffs argue that Western Mine Engineering, Inc., is not a "person" because it was under the direct supervision and control of the United States Forest Service and was required to submit its report directly to the United States Forest Service.  However, the caselaw they rely on does not stand for that proposition. They rely upon *Consumers Union of United States, Inc. v. Veterans Administration*, 301 F. Supp. 796, 802-03 (S.D.N.Y. 1969), which simply concluded that information must be obtained from outside the government to fall within Exemption 4. The requested information in that case – records of the Veterans Administration's hearing-aid testing program – had been completely generated by the Veterans Administration and was thus not subject to the exemption.

Contending that the contractual relationship between Western Mine Engineering, Inc., and the United States Forest Service vitiates Western Mine Engineering, Inc.'s status as a "person," the Plaintiffs also rely upon *Benson v. General Services Administration*, 289 F. Supp. 590 (W.D. Wash. 1968), *aff'd*, 415 F.2d 878 (9th Cir. 1969).  However, *Benson* is inapposite.

The *Benson* court concluded that Exemption 4 applies only when information is obtained from a person outside the agency and such person wishes the information to remain confidential. It did not hold that a contractual relationship between an agency and an outsider would vitiate the outsider's status as a "person" for purposes of the exemption.  Rather, if anything can be generalized from that opinion, it is the following: when (1) an outsider compiles information on behalf of a client with whom it has a contractual relationship, (2) the client is also an outsider, and

10

(3) the client has an expectation that the information will remain confidential, then the exemption may apply.

Here, Western Mine Engineering, Inc.'s contractual relationship was with the Mt. Emmons Mining Company, not with the BLM. The Mt. Emmons Mining Company hired Western Mine Engineering, Inc. to prepare an objective economic analysis report so that the United States Forest Service could evaluate its mineral patent application. Therefore, the work performed by Western Mine Engineering, Inc., inured mainly to the benefit of the Mt. Emmons Mining Company.

The Plaintiffs also rely upon *Martin Marietta Aluminum, Inc. v. Administrator, General Services Administration*, 444 F. Supp. 945 (C.D. Cal. 1977). This opinion is not instructive because the court did not address the issue of whether information was obtained from a "person." Instead, it concluded that appraisal reports prepared for the GSA were not confidential for purposes of Exemption 4.

The portions of the Mineral Report that the BLM withheld contain information obtained either from the Mt. Emmons Mining Company or from Western Mine Engineering, Inc. Western Mine Engineering, Inc., prepared the Western Mine Engineering Report. Both Western Mine Engineering, Inc., and the Mt. Emmons Mining Company are "persons" within the meaning of the FOIA. Therefore, the Court concludes that the withheld information was obtained from a "person."

### Privileged or Confidential

The Federal Defendants do not contend that the withheld documents are privileged. Instead, they contend that the undisclosed information is confidential because: (1) disclosure

would impair the BLM's ability to obtain this type of information in the future; and (2) disclosure

is likely to cause substantial harm to the competitive position of the party from whom the

information was obtained.

The Plaintiffs respond that the information is not confidential because it was made public

by the Mt. Emmons Mining Company when it released the Behre Dolbear Report. They further

assert that the Federal Defendants have not demonstrated that disclosure will impair the BLM's

ability to obtain this type of information in the future. They also contend that the Federal

Defendants have not demonstrated actual competition between the Mt. Emmons Mining Company

and others or a likelihood of substantial competitive injury.

When the government requires the disclosure of commercial or financial information, such

information is confidential if its disclosure: (1) will impair the government's ability to obtain

necessary information in the future; or (2) is likely to cause substantial harm to the competitive

position of the person who submitted it to the government. *See Anderson v. Dept. of Health &*

*Human Services*, 907 F.2d at 946; *Utah v. U.S. Dept. of Interior*, 256 F.3d 967, 969 (10th Cir.

2001). The second category requires: (1) the existence of actual competition; and     (2) the

likelihood of a substantial competitive injury. *See Utah*, 256 F.3d at 970. The Court is not

required to conduct a sophisticated economic analysis as to the likely effects of disclosure. *See id.*

Only potential economic harm, as opposed to actual economic harm, must be proven. *See id.*

However, conclusory and generalized allegations of a substantial competitive harm will not carry

the day. *See id.*

The evidence that the Federal Defendants have provided to establish that the documents

are confidential is: (1) a revised *Vaughn* index; (2) an affidavit from Roger Haskins, a Senior

Specialist with the BLM; (3) an electronic mail from H. Barry Holt on behalf of the Mt. Emmons

Mining Company and the Phelps Dodge Corporation; and (4) an affidavit from Kathy Terenzi, the

FOIA Officer and Privacy Act Manager for the Colorado BLM, stating that the BLM considered

Mr. Holt's electronic mail prior to issuing its FOIA response.

They offer Mr. Haskins' affidavit to establish that disclosure of the withheld documents

will impair their ability to obtain this type of information in the future because it is proprietary

information which they need in order to process a mineral patent application. His affidavit states:

> 5. To comply with 43 C.F.R. § 3862.1-1, the mining claimant generally provides proprietary and confidential information about the type and extent of the mineral deposit, including information about the presence, kind, and grade of ore in specific drill holes, assay results, the quantity and grade of mineral reserves, and estimates and analyses of mineral extraction, processing, and mine reclamation costs, in support of the patent application.
>
> 6. Obtaining this type of proprietary and confidential information from the patent applicant is essential to the BLM's ability to determine whether the applicant has satisfied the requirements for a patent under the Mining Law.
>
> 7. Often the information provided by the applicant includes data pertaining to the applicant's entire mining operation, including operations on private lands or other unpatented mining claims, and not just the claims under patent application.
>
> 8. This type of information is customarily considered proprietary in the mining industry, and its release could result in severe economic damage to the mining company that invested vast sums of capital acquiring the information. Such information is generally kept confidential for life of the developed mine.
>
> 9. To the extent that this type of information is readily provided to the BLM by the mining claimant with the patent application, the BLM's analysis of the patent application is more efficient, cost effective, and requires less government resources.

13

He then opines:

> 10.      Requiring the BLM to disclose this type of
> information obtained in connection with a patent application when
> it is considered proprietary and confidential in the mining industry is
> likely to impair the BLM's ability to obtain this necessary
> information in the future.

The Federal Defendants offer Mr. Holt's electronic mail to establish that disclosure of the

withheld information will substantially harm the competitive position of the Mt. Emmons Mining

Company.  This electronic mail states:

> The molybdenum market can be volatile and sometimes speculative.
> Release of proprietary mineral and economic information would
> result in a distinct competitive disadvantage and harm to Phelps
> Dodge.  Information about the presence, kind, and grade of ore in
> specific drill holes, and the quantity and grade of reserves, coupled
> with estimates and analyses of mineral extraction, processing, and
> mine reclamation costs, all could be used by competitors in
> developing pricing strategies to underbid Phelps Dodge in the
> futures markets.  Release of sampling data also could artificially
> inflate property values in the area by revealing valuable prospects of
> which competitors otherwise would not be aware.  This type of
> information customarily is considered proprietary in the mining
> industry, and its release could result in severe economic damage to
> the mining company that invested vast sums of capital acquiring the
> information.  Such information generally should be kept confidential
> for the life of the developed mine.

Notwithstanding such evidence, the Court cannot determine whether the withheld

information is proprietary and would be treated as confidential by the Mt. Emmons Mining

Company given its disclosure of the Behre Dolbear Report.  In addition, it is not apparent from

the revised *Vaughn* index whether the withheld documents and excerpts of documents contain

information which, if disclosed, would likely to harm the competitive interests of the Mt. Emmons

Mining Company.  Some of the withheld documents are not sufficiently described.  For instance,

the revised *Vaughn* index states that the subject matter of page 2 is a "summary and recommendations." The descriptions of other withheld documents suggest that the undisclosed information may already have been made public through the release of the Behre Dolbear Report. It is necessary for the Court to conduct an *in camera* review of the pertinent documents, comparing them with the Behre Dolbear Report and other documents that have already been disclosed. Therefore, the Court denies the Federal Defendants' motion for summary judgment.

### B. The Plaintiffs' Motion

The Plaintiffs' motion challenges the Federal Defendants' ability to make a *prima facie* showing that Exemption 4 applies to the withheld documents. The Federal Defendants have made such showing. They have produced evidence which shows that each of the withheld or redacted documents contained commercial or financial information obtained from a person. They also have made a *prima facie* showing that the documents are confidential. Whether the documents are actually confidential is a dispute the Court cannot resolve on the parties' motions. Therefore, the Court denies the Plaintiffs' motion for summary judgment.

**IT IS THEREFORE ORDERED** that:

(1)     The Federal Defendants' motion for summary judgment **(#36)** is **DENIED**.

(2)     The Plaintiffs' motion for summary judgment **(#38)** is **DENIED.**

(3)     On October 14, 2005:

(a)     The Federal Defendants shall deliver to chambers, unredacted hard copies of the Mineral Report, the Western Mine Engineering Report, and the Behre Dolbear Report for *in camera* review, highlighting in yellow ink those portions of the documents which they believe are exempt from disclosure. They shall also file

15

and serve a copy of the revised *Vaughn* index.

(b)     The Plaintiffs shall file and serve a written document which correlates each

entry in the revised *Vaughn* index to the specific page or pages of the Behre

Dolbear Report that the Plaintiffs believe show that the withheld documents are

not confidential.  If an entry in the *Vaughn* index is not specific enough for the

Plaintiffs to make such correlation, they shall so specify.

Dated this 30th day of September, 2005.

**BY THE COURT:**

Marcia S. Krieger
United States District Judge